**STAHLY, Inc. v. M. H. JACOBS CO. et al.**

No. 10047.

United States Court of Appeals
Seventh Circuit.

June 9, 1950.

Rehearing Denied Aug. 15, 1950.

Jules L. Brady, John Rex Allen, Chicago, Ill., Schroeder, Merriam, Hofgren & Brady, Chicago, Ill., for appellant.

Albert F. Mecklenburger, Sidney Neuman, Arthur B. Seibold, Jr., all of Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, an Indiana corporation engaged in the sale of mechanical razors under the trade-marks "Stahly" and "Live Blade," instituted this suit to enjoin defendants from selling razors with plaintiff's trade-marks impressed thereon, contending that such sales were violative of its trade-mark and fair trade rights. The District Court, upon defendants' motion for summary judgment, dismissed the complaint, holding that plaintiff had waived its rights with respect to the razors in the possession of the defendants. Plaintiff contends that the court erred in this conclusion and, further, that, inasmuch as there were, on the face of the pleadings, genuine issues as to material facts, granting defendants' motion for summary judgment constituted additional error.

In the summer of 1948, both plaintiff and Aircraft & Diesel Equipment Corporation, with whom it had contracted for the manufacture of 125,000 Stahly Live Blade Razors, were in serious financial condition. Aircraft, after delivering approximately 80,000 razors to plaintiff, refused to make further shipments unless plaintiff would make payment in advance, though the contract provided that it was to have thirty days' credit. When it became evident that plaintiff could not pay in advance, Aircraft advised plaintiff that, in order for it to continue operations, it would have to dispose of the 45,000 razors. Plaintiff thereupon sought to market them as prizes or premiums, but its efforts in this direction were unsuccessful. It was subsequently informed by Aircraft that the latter desired to pledge the razors as security for a loan it proposed to procure from General Factors Corporation. At the behest of both Aircraft and General Factors, plaintiff signed a letter of consent, addressed to General Factors, as follows: "We understand that Aircraft & Diesel Equipment Corporation has on hand approximately 45,000 Stahly Live Blade Razors which are in the possession of said Aircraft & Diesel Equipment Corporation subject to our order as to shipment. In consideration of your making a loan to said Aircraft & Diesel Equipment Corporation, we hereby consent to and agree that we will not assert any rights or claims contrary to your rights to realize upon such security as pledgee thereof in the event of non-payment of the loan."

After the loan had been made and Aircraft had defaulted thereon, plaintiff learned that General Factors was planning to foreclose upon the razors which had been pledged as security and thereupon submitted a bid of $2.00 per razor. General Factors declined this offer, and eventually sold the razors to defendants for $50,000, amounting to approximately $1.10 per unit. As soon as it had been advised of the sale, plaintiff warned defendants that sale of the razors without the removal of plaintiff's trade-marks would infringe its legal rights and, further, that sale of the trade-marked goods at prices below those established under the fair trade agreements which had been negotiated by plaintiff in the states which allow them would violate its fair trade rights. As a consequence of defendants'

failure to reply to this communication and plaintiff's receipt of numerous complaints from its regular dealers that defendants were offering the trade-marked razors to the public at prices below the established fair trade prices, this suit was begun.

Plaintiff contends that there were and are genuine issues as to material matters of fact which, under the provisions of Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Rule 56(c), prohibit disposition of this case on a motion for summary judgment. This argument rests on plaintiff's assertion that it has alleged, and defendants have denied, (1), that the razors involved are in defective condition, (2), that defendants did not, in purchasing them from General Factors, rely on the so-called letter of consent executed by plaintiff, and, (3), that plaintiff was induced to sign this letter by reason of certain false promises made by Aircraft and General Factors, which fact, it is urged, makes that document wholly void and inoperative.

Plaintiff's contention that a factual dispute exists with respect to the condition of the razors is, we think, refuted by defendants' express admission that they are defective. True, defendants' motion to dismiss points out that the complaint fails to aver with particularity wherein the alleged defect resides and asserts that the averment that they are defective "is a bald conclusion without any allegations of fact to support same," and one of the defendants has, by affidavit, stated that the razors are not defective, but, on the other hand, defendants have expressly stated, in their brief and on oral argument, that they "admit that the 45,000 razors were just as defective as plaintiff says they were." Moreover, if the District Court correctly construed the letter of consent as a waiver and abandonment of all plaintiff's rights with respect to the razors, the existence or non-existence of the alleged defect was not a material issue in this case and, consequently, could not, under the provisions of Rule 56(c), render erroneous the District Court's disposition thereof on motion for summary judgment.

Nor is there merit in the assertion that there is an issue of fact as to defendants' reliance on the letter of consent. Tarrson's affidavit, which is, as plaintiff observes, the "only thing in the record with respect to this matter," states that he was shown the letter and that, in reliance thereon, he purchased the razors. Plaintiff's failure to controvert this statement, by affidavit or by offer of opposing proof, or to seek disclosure and discovery with respect thereto on the basis of an averment that the facts were wholly within the knowledge of the defendants requires rejection of its contention that there is a substantial question of fact as to defendants' reliance on the letter of consent. Gray v. Amerada Petroleum Corp., 5 Cir., 145 F.2d 730; Hummel v. Riordon, D.C.Ill., 56 F.Supp. 983, 987.

And the conclusive answer to plaintiff's contention that an issue of fact exists with respect to the existence or non-existence of fraud, resulting from the assertion that its execution of the letter of consent was obtained by means of false promises, is to be found in the Illinois cases which hold that fraud in the inducement must be based upon a misrepresentation of fact and cannot rest on a false promise to do an act in the future, even though accompanied by an intention not to perform, Keithley v. Mutual Life Ins. Co., 271 Ill. 584, 586, 111 N.E. 503; Thomson v. Miner, 303 Ill.App. 335, 25 N.E.2d 137, for, in view of this rule, whether false promises were, in fact, made to plaintiff, or whether such promises, if made, did or did not induce plaintiff to sign the letter of consent is wholly immaterial in the disposition of this case.

Having determined that a summary judgment was not improper, the only question remaining is whether that judgment was correct as a matter of law. Dismissal of the complaint was the result of the trial court's decision that the letter of consent signed by plaintiff "constitutes a waiver and abandonment of all rights plaintiff could assert as to the razors without regard to future possession by any other person." Plaintiff insists that this conclusion is erroneous, that its letter of consent did not

constitute a waiver of all its rights with respect to the razors, but was limited to the assertion of rights or claims contrary to the pledgee's right to realize upon the security; moreover, it is contended that, irrespective of the effect of the letter of consent, defendants' sales of defective razors bearing plaintiff's trade-mark, without any indication that said razors are defective or that defendants are the vendors thereof, violate the trade-mark rights of plaintiff and constitute a fraud upon the public such as the trade-mark laws were designed to prevent. Defendants, however, maintain that the waiver embodied in the letter of consent is conclusive of the rights asserted by plaintiff herein.

In the letter by which it consented to the pledge of the 45,000 Stahly Live Blade Razors as security for the loan from General Factors to Aircraft, plaintiff promised General Factors that it "will not assert any rights or claims contrary to your rights to realize upon such security as pledgee thereof, in the event of non-payment of the loan." It seems quite clear that the pledgee's right to realize upon its security would have been seriously impaired by a proviso that the purchaser from the pledgee could not resell the razors without removing therefrom plaintiff's trade-mark, or that the razors could not be resold at a price lower than the fair trade price established by plaintiff, for, obviously, no prospective purchaser would buy 45,000 trade-marked razors which it could not resell. Yet these are, in brief, the precise restrictions which plaintiff would have this court read into the letter of consent,—restrictions which would have the inevitable effect of nullifying its promise not to assert any rights contrary to General Factors' right to realize upon the security. The fact that plaintiff did not seek so to qualify the waiver until after General Factors had realized upon the security by selling the razors to the defendants is immaterial, for the qualification, if it exists now, has existed from the very moment the letter was executed; yet, as has been pointed out, its existence at that time would have been wholly inconsistent with plaintiff's promise to refrain from asserting any rights contrary to those of the pledgee. Consequently, the District Court was completely justified in construing the very broad language employed in the letter as a waiver and abandonment of all plaintiff's rights, trade-mark and fair trade rights included, with respect to the 45,000 razors.

To say, however, that plaintiff has waived all its rights with respect to these razors is not to say that defendants are to be permitted to offer them for sale to the public without any indication that they are in a defective condition and are not backed by the one year guarantee which covers the razors as to which plaintiff is the source of origin. It must be remembered that the trade-mark laws and the law of unfair competition are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit, Stork Restaurant, Inc., v. Sahati, 9 Cir., 166 F.2d 348, 354; Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, 965, 966; General Baking Co. v. Gorman, 1 Cir., 3 F.2d 891, 893; Goldwyn Pictures Corp. v. Goldwyn, 2 Cir., 296 F. 391, 401, and it is obvious that the right of the public to be so protected is a right which transcends the rights of the individual trade-mark owner and is beyond his power to waive. In this case, then, the letter executed by the plaintiff, although it operated to waive all of plaintiff's rights with respect to the razors in question, could not possibly have had the effect of waiving the public's right to be safeguarded against fraud and deception. This public right has been recognized and accorded protection by the Supreme Court in such cases as Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731, (in which a purchaser for resale of trade-marked powders and perfumes, although allowed to state that the products it offered to the public contained said trade-marked powders and perfumes, was required to print upon its labels a notice to the effect that the trade-marked powder had been reworked and the trade-marked perfume independently rebottled by it), and Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L. Ed. 1386, (in which one engaged in the

business of repairing used trade-marked spark plugs and reselling them without removal of the trade-marks was required to stamp, upon both the plugs and the containers in which they were offered for sale, the work "repaired" or the word "used"). The ratio decidendi of these decisions we conclude, requires that defendants be prohibited from offering to the public admittedly defective Stahly Live Blade Razors without indicating to prospective purchasers the fact that the razors are equipped with a defective pawl spring and are not backed by the one year guarantee applicable to the razors sold by plaintiff through its established dealers.

The judgment of the District Court is modified in conformity with the opinion of this court and, so modified, affirmed. The costs of this appeal will be apportioned equally between the parties.

### On Petition for Rehearing.

LINDLEY, Circuit Judge.

It is the position of the defendants in their petition for rehearing that this court, having decided that plaintiff had waived its rights with respect to the razors in question, should have affirmed the judgment without modification, and that this is true irrespective of whether defendants are or are not engaged in the perpetration of a fraud upon the public. In support of the argument, defendants cite cases which hold, they say, that, absent violation of a private right, plaintiff has no standing in court as a protector of the public interest. Strongest of these is American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 103 F. 281, 285, 50 L.R.A. 609, in which the court declined to enjoin the defendant, a competitor of the plaintiff, from selling to the public washboards which were branded "Aluminum" but which were not, in fact, made of that metal, saying: "It is doubtless morally wrong and improper to impose upon the public by the sale of spurious goods, but this does not give rise to a private right of action unless the property rights of the plaintiff are thereby invaded. There are many wrongs which can only be righted through public prosecution, and for which the legislature, and not the courts, must

provide a remedy. Courts of equity, in granting relief by injunction, are concerned with the property rights of complainant." This decision was cited with apparent approval by the Supreme Court in Mosler Safe Co. v. Ely-Norris Safe Co., 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578, reversing 2 Cir., 7 F.2d 603, and in Federal Trade Commission v. Klesner, 280 U.S. 19, 27, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838.

Plaintiff seeks to distinguish the Washboard case, as well as others cited by defendants, by pointing out that the plaintiffs in those cases not only had no private rights which had been infringed but had never had any such rights capable of being infringed by the other party, whereas in the case at bar plaintiff does have rights which would have been infringed but for its waiver. Plaintiff also suggests that this court and other federal courts have, in cases in which it was held that no rights of the plaintiff had been violated, so framed their judgments as to prevent the defendant from deceiving the public. This court's decision in Horlick's Malted Milk Corp. v. Horlick, 7 Cir., 143 F.2d 32, (in which the defendant was held to have a right to use the name "Horlick" but was nonetheless enjoined from using it except in combination with his first name and address, the court feeling that the possibility of confusion of the public warranted this restriction), and that of the Second Circuit in DuPont Cellophane Co. v. Waxed Products Co., 85 F.2d 75, (in which the defendant was held to be entitled to apply the name "cellophane" to its product but was required to indicate the source of origin so as to avoid deception of the purchasing public), are strongly relied on by the plaintiff to support this proposition and to justify a holding that the Federal Trade Commission is not the exclusive agency for the protection of the public from deceptive practices in commerce.

■ While none of the decisions cited is on all fours with the instant case, it cannot be denied that those relied on by defendants are very near and that the distinction sought to be drawn by plaintiff between them and this case is a rather tenuous one. Even so, we think the trial court

in the instant case, aware that Congress has declared unlawful "unfair or deceptive acts or practices in commerce," 15 U.S.C.A. § 45, and confronted with a record which indicates that defendants are engaging in such deceptive acts or practices, had the inherent power to frame its decree, as it did in Horlick's Malted Milk Corp. v. Horlick, 7 Cir., 143 F.2d 32, and as other courts have done in other cases, DuPont Cellophane Co. v. Waxed Products Co., 2 Cir., 85 F.2d 75; Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386, in such a manner as to protect the public against the continuation of those unlawful acts and practices, and this without regard to violation or non-violation of any rights of plaintiff. It should be borne in mind that our modification of the District Court's judgment does not accord to plaintiff the relief it sought, or amount to a recognition of the existence of the trade-mark or fair trade rights asserted by the plaintiff, for defendants are not prohibited from selling the razors with plaintiff's trade-mark thereon at prices lower than the fair trade prices established by plaintiff, but are merely required to inform the public of the defective condition of those razors. The obvious purpose of the directed modification is to protect the public from fraud and deception; any benefit to plaintiff is only incidental to realization of that purpose. We conclude, therefore, that the cases cited in our opinion, as well as those now relied on by plaintiff, justify the modification. If, on the other hand, as defendants insist, it is the law that the court, because it determined that plaintiff had suffered no legal wrong at the hands of defendants, was powerless to prevent the perpetration of an admitted fraud upon the public, it would seem that the Supreme Court should be accorded an opportunity so to decide.

Defendants maintain that they admitted only for the purposes of the disposition of their motion for summary judgment, that the razors they are offering to the public are, in fact, defective. But the admission, though made for that limited purpose, is still binding on them, for their motion was granted by the trial court, and this court has not reversed that court but,

affirming the allowance of the motion for summary judgment, has merely indicated its belief that, on the basis of the admitted facts, the terms of the judgment should be modified. Thus defendants' motion never having been overruled, the admission is still effective. This case is readily distinguished from Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971, relied on by defendants, for there the court reversed the judgment entered by the trial court and then proceeded to direct the entry of a personal money judgment for appellant.

The petition for rehearing is denied.